The first case is Liebowitz v. Bandshell Artist Management. May I begin, Your Honor? Yes, you may. Good morning, Your Honors. My name is Brian Jacobs from Orvillo, Abramowitz Grand, Ayosin, and Enelo. May it please the Court, I represent Richard Liebowitz and the Liebowitz Law Firm on appeal. This Court should reverse the District Court's extraordinary order sanctioning Mr. Liebowitz and his law firm. The order fails the exacting version of the abuse of discretion standard of review that applies because it was based on multiple clearly erroneous findings of fact, it imposed excessive punitive monetary sanctions without proper procedures, and it imposed overbroad non-monetary sanctions. I'll turn first to the District Court's abuse of discretion in basing sanctions on clearly erroneous factual findings. The first finding was that Mr. Liebowitz lied in bad faith about getting permission for his client, Mr. Usherson, to appear at a mediation by telephone, and the District Court reached this determination by crediting the mediator's testimony and discrediting Mr. Liebowitz's. Now, while credibility determinations ordinarily do get deference, they are vulnerable when they're founded on factual inferences that the evidence did not permit, and that's precisely what happened here. The District Court... Can I just ask, what about the email exchange between the mediator and Mr. Newberg on the eve of the mediation? I mean, you have a hard road to walk in upsetting a credibility finding, but explain to me why that doesn't corroborate the mediator's testimony. Your Honor, Mr. Newberg emailed the mediator and wrote that Mr. Newberg would have expected that early in the morning if he was attending in person, and the mediator responded, I understand. And the inference that Judge Furman draws from that is that the mediator did not know at that time and had not given permission for Mr. Usherson to attend by telephone. But in the mediator's actual testimony, the mediator couldn't recall whether he would have said more than I understand if he'd known that Mr. Usherson wouldn't be attending. And in fact, according to Mr. Newberg's own declaration, the mediator told him the next morning that the mediator doubted Mr. Usherson would be attending, which was another point that the mediator in his testimony couldn't remember and forgot. And this dubious evidence is really not a sufficient basis to base such a serious finding as sanctions on. The I understand email is subject to multiple readings and the mediator's failure of memory... Was the court's reading of it unreasonable or irrational? I think in combination with the other reasons the court gave for finding that Mr. Leibowitz lied to the court, yes, it was clearly erroneous. The other reasons the district court gave for... This was not the only reason the district court gave. The district court also said that the mediator lacked any stake in the matter, even though the mediator himself in his testimony, when confronted by Judge Furman, refused to stand by his sworn declaration on the other issue, which was the question of whether the mediator had given Mr. Leibowitz permission to appear through associates rather than himself. On that point, the mediator submitted a sworn declaration saying he had not given permission. But then when Judge Furman confronted the mediator at the hearing, the mediator said he would not stand by that declaration at Joint Appendix 453. The judge Furman also said the mediator was corroborated by Mr. Newberg's testimony. But again, that testimony was inconsistent with what the mediator said on the point I mentioned a to the mediator telling Mr. Newberg that he doubted Usherson would be appearing. And so while ordinarily it's true that you defer to credibility determinations, the Amatex case, which we cite in our brief, is a good example of a case where this court overturned a sanctions order, reversed it, despite the fact that two witnesses testified against the attorney at issue there, because those two witnesses, this court said, had had failures of memory and were not adequately reliable for such a serious finding. And that's precisely what happened here. The district courts also erred in finding that Mr. Leibowitz's testimony was not credible. The reasons the district court gave simply don't hold up to scrutiny. The district court said that Mr. Leibowitz's testimony was not corroborated at all, but it was corroborated. It was corroborated by the fact that at multiple prior mediations, this mediator had allowed clients to appear by phone. It was corroborated by the fact that the mediator himself in this very mediation had authorized the entire mediation to happen by phone. But what the record leaves no doubt about, though, is that Mr. Leibowitz was in Los Angeles on the eve of the mediation date, and Mr. Usherson was in Georgia. Isn't that right? Yes, Your Honor. With respect to Mr. Leibowitz's presence in Los Angeles, the district court did not impose sanctions based on Mr. Leibowitz's failure to attend the mediation. The district court found that the record was too muddled on that point. It was only with respect to the question of whether Mr. Leibowitz lied about getting permission for Mr. Usherson to appear in person. And it's true that Mr. Usherson was in Georgia the day before the mediation, and the district court did say it's not credible that Mr. Leibowitz would have arranged last-minute travel plans. But given the record here, it was incredibly unlikely or reasonable to think that it was incredibly unlikely the request would be denied, where the mediator had already permitted. Seriously, counsel, you tell me that when you have a client that the court might require to be in court the next day, do you advise them? Well, in the past, Judge Wesley doesn't generally require them to be there. You can stay in Atlanta. You don't advise them that they may very well be required to be in court? Is that the advice you'd give your client? Your Honor, of course the better practice is to advise the client. Well, you just told me that it was reasonable to presume that he wouldn't have to. But to my mind, it's very doubtful that Leibowitz actually had permission from the mediator. And I realize you have a different view of the evidence, but if we find that that was not a clearly erroneous finding, doesn't that put Mr. Leibowitz in a precarious position? What I think the argument is, Your Honor, is that it was not a reason to discredit Mr. Leibowitz, the idea that he would have arranged last-minute travel plans. Although it surely is the better practice to advise a client far in advance, it was not credible for Mr. Leibowitz to say he would arrange last-minute travel plans in the event he did not get permission. I want to turn to the overbreath of the monetary sanctions, and in particular the $20,000 component was clearly punitive. And when a punitive sanction is going to be imposed, it needs to be done with the protections of the criminal procedure law. This Court's Mackler decision is directly on point. In that case, the District Court imposed a compensatory sanction, just like here the District Court imposed an $83,000 compensatory sanction. And the Court also imposed a $10,000 sanction. But this Court overturned the $10,000 sanction and found it was impermissibly punitive. And what makes a sanction impermissibly punitive is when it's based on past wrongful conduct. You look at whether it's payable to the court or the injured party, and here it's payable to the court. You look at whether there's an opportunity to purge, and here there's none. This $20,000 additional sanction has all the hallmarks of a punitive sanction. Would it be fair to characterize it, though, as a coercive sanction? I mean, clearly intended to provide a strong incentive for Mr. Leibowitz and his client to comply more meticulously with court orders in the future. And the District Court clearly was very frustrated with what he saw as a pattern, both in his courtroom and elsewhere. And we have distinguished between coercive sanctions and punitive sanctions in the past. This was, you know, might see as coercive, it seems to me. Is that incorrect? Your Honor, I think the other factors that are present here suggest that it's punitive and suggest that more strongly than that it's coercive. It's payable to the court. There already is a compensatory sanction of $83,000. Judge Furman gives no reason why an additional $20,000 will provide coercion that the $83,000 does not. And given that there already is that does appear to be punishment for past conduct, past conduct that Judge Furman recites at length and attaches an appendix of 40 or some cases to illustrate. And Mr. Leibowitz really should have had the protection of the criminal procedures. I see my time is up. I'm happy to answer. If I could ask to the indulgence of the presider just for a question for a second. With regard to the $83,000, I saw your argument about the fact that the attorney was appearing pro bono. I don't want to go into that. But did you in front of Judge Furman contest the reasonableness of the amounts of time that were listed by counsel with regard to the preparation of the motions with regard to sanctions? Your Honor, we didn't represent Mr. Leibowitz. No, I'm not asking. I didn't mean you personally. I meant either Mr. Leibowitz. Was the reasonableness of the amounts of time contested as to that aspect of the attorney's fees, the $88,000, was that contested in front of Judge Furman? I believe Judge Furman reduced the amount requested by just a bit and ultimately awarded more than 90 percent of the amount requested. I need to check the record for the degree to which the amount was contested below. Okay. That's okay. Thank you very, very much. Thank you. Thank you, Judge. Thank you. And we'll hear from Mr. Newberg. Thank you, Your Honor, and good morning. May it please the court, my name is Brad Newberg of McGuire Woods, and I represent Banshell Artist Management. This is no doubt an unusual case, but the legal question is discreet and straightforward. Did Judge Furman abuse the considerable discretion United States district judges are given to impose sanctions? And the answer is he did not abuse his discretion. Appellants claim in their briefs that this is a case of personal animus, but the record is clear. The district court's opinions, both the sanctions opinion and the opinion denying a stay of sanctions, are detailed and focused, and his findings are certainly not unique to this case, given the dozens of times Mr. Leibowitz has been sanctioned by judges before and since, including his suspension from the practice of law in the to protect the public. It's clear from the lower court's sanctions, which it found were justified under all of Rule 16, its inherent power, and Section 1927, were directly tied to Mr. Leibowitz's specific misdeeds in this case, taking into account, as appropriate, the failure of prior sanctions to have any effect on Mr. Leibowitz's behavior. A review of the decision below shows it's actually quite measured. As made clear from the record and opinion, the court could have found Mr. Leibowitz committed additional violations and falsehoods to the court. Instead, the court focused on violations overwhelmingly supported by clear and convincing evidence and crafted appropriate sanctions within its discretion. Now, in this case, appellants concede violations of various court orders, but focus on two findings. Appellants claim the district court abused its violated a court order by having his client not show up to a court-ordered in-person mediation, and finding he then continuously lied about receiving permission for lack of attendance from the mediator. And two, finding Mr. Leibowitz failed to investigate whether the photograph in question was covered by the copyright registration cited in the complaint, not only when he filed the complaint, but also after he was put on notice to the potential defect, and finding he then continued to lie and cover up that defect as he kept the case going until he could get a settlement. Now, appellant's arguments related to both findings appears to rest on the idea that judges should not be the arbiters of veracity, even when the evidence lines up so clearly on one side of the ledger, which is contrary to law. However, taking the two findings in turn, first Mr. Leibowitz's defense to the mediation issue, to claiming he received permission of the mediator first client not to appear, was directly refuted in addition to the mediator by a court order, not mentioned by my colleague on the other side, denying his prior request to have his client appear telephonically, and by the mediation office's rules, and then their clear direction to him personally in writing that his client show in person. These orders and instructions effectively prohibited him from even asking for the permission he says he got later from the mediator. But his claims were also directly refuted by the mediator, by both his declaration and on the stand, but in addition by opposing counsel, by Mr. Leibowitz's own associate, and through clear documentary evidence, including that he chose the mediation date as the day his client could supposedly appear in person. How do you respond, sir, to Mr. Leibowitz's argument that the mediator was not a neutral witness, due to his own past non-compliance with the relevant court and mediation rules, which arguably put his own reputation and future employment at stake, and particularly in the context of what seemed to be somewhat muddy testimonies, maybe even you know inconsistent testimony? Well your honor, I would say that first off there really weren't, picking these slight cherry-picked consistencies around the edges, there really was overwhelming testimony and evidence. But in terms of the mediator's reputation, you know, Hellens tried to impugn the reputation saying that effectively he was trying to cover up his own helping Mr. Leibowitz evade court orders. There was nothing of that brought up when he was on the stand to be questioned. He had a declaration before with no indication that the court was upset with the mediator. The court never really challenged the mediator about what he did wrong. There's simply no evidence to suggest that the mediator all of a sudden said, oh, I'm in trouble, I better lie and cover this up here, especially given the documentary evidence as well. And Mr. Leibowitz, of course, had no evidence or documents to support his own claims. And through his filings, as you can see from the record, both to the court and under oath and in the cross-examination on the stand, with all respect to him, his stories were ever-changing and often outright ludicrous. Hellens challenged Judge Furman's decision not to believe Mr. Leibowitz's claims, but that is a judge's call. A district court's assessment of witness credibility is important, squarely within the judge's province and given, quote, particularly strong deference, close quote, as the United States v. Norman, United States v. Midland credit, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions were warranted. I know that same case, the court cited Enman, which we have said to say a court does not have to discount sanctions just because it doesn't find every part of a sanctions motion. And what about the argument that we just heard that the $20,000 sanction was punitive and of the nature that required greater process before the district court could impose it? Is that a legitimate claim? Mr. Leibowitz had no opportunity to reduce the sanction. Isn't that right? You know, it's not a legitimate claim. And Judge Cornyn, I thought your question about coercive was spot on. And that was exactly right. And I will say, as you've noted, appellants only raised that argument for the 20,000 sanctions, not for the rest. And that's been done in the past when the sanctions are equivalent to criminal penalties. There's no argument as to how these penalties were somehow criminal to get those sort of protections from criminal sanctions. Mr. Leibowitz was represented by counsel at these hearings. He never raised any additional requirements. He paid the amounts immediately without asking for given the egregious nature of how much he and how often he had been sanctioned before. This was clearly coercive with the judge realizing that prior sanctions were not helping the situation. How do we know that, that the penalty is coercive and not punitive in nature? Well, your honor, I think what we can establish from the record is that in terms of this 20,000 compared to what he has been sanctioned many times in the past, this is actually a drop in the bucket. For instance, in Mackler, we were talking about a 78-year-old lawyer who, as the court said, had an impeccable record before that one sanction. Here, the court was within its discretion to look at what had been done previously. Mr. Leibowitz had, this wasn't his first run in with a copyright registration. The court was looking to make sure that he did this properly in the future. I think when you set everything up, it certainly looks more coercive than punitive and certainly punitive to the point of needing criminal protections. Now, appellants, of course, have to show the district court abused its discretion because it erred on the law or clearly erroneous assessment of the evidence. Appellants barely touch any law that the court got wrong in terms of its factual findings. In their attempt, they ignore all the evidence and try to cherry pick around. Now, the copyright registration issue, I want to just point to for a second, Mr. Leibowitz was put on notice at the beginning of this case that the copyright registration listed in the complaint was likely incorrect and the photographic issue not registered when the complaint was filed. He was warned if that were the case, the claim would need to be dismissed in accordance with the Supreme Court's fourth state project. Mr. Leibowitz's response was to falsely assure the court, no, this is the right registration. We don't need early discovery on this. He forced the case to continue, did not investigate the issue at best, and continued to evade finally blaming a low-level ex-employee as an administrative error, an excuse he's used often enough that courts have noted his penchant for claiming so-called administrative errors. Now, as I said before, these sanctions are carefully and thoughtfully tied to the issues and his history, and I will also point out that in their brief, they say that having him attach deposit files of the work in question in future cases somehow shifts the burden because copyright registrations are prima facie evidence of copyrightability, and that's a red herring. To get that benefit, a plaintiff must still prove this registration is the right one. There's also nothing an issue with the courts making this national in scope in terms of having to file it with other courts and serve on Mr. Leibowitz's clients. Appellants can see nationwide sanctions are often appropriate where attorneys are abusing the legal system, and we've cited cases such as Enri Martin-Tragona where this court specifically said courts have an obligation to issue sanctions to protect the entire judicial system, not just their jurisdiction. Finally, in conclusion, I note there is a shade of mootness to this appeal and that Mr. Leibowitz immediately paid the monetary award against him to the court, and the non-monetary sanctions had a one-year timeline which expires the end of this June. However, an affirmance is still important to uphold district judges' discretion to craft appropriate sanctions, most especially in extreme cases as this one, given that prior sanctions awards have resulted in paper cuts having little effect on his egregious behavior. So based on his actions in this case, combined with his detailed history, the sanctions were appropriate and we respectfully ask this court to fully affirm the whole thing below. Thank you. We'll hear rebuttal. Thank you, Your Honor. Just first, let me respond again to Judge Wesley's question. In the proceedings below on Joint Appendix 267 to 268, a letter from the Leibowitz law firm argued that the court, Judge Furman, should decline to consider the amount of Mr. Newberg's fees incurred in prosecuting the sanctions and should instead calculate the amount by reference to precedent and the circumstances in the case, which I would say is sufficient to preserve the issue. Turning to just a couple of Mr. Newberg's arguments here, first he argues, as in the briefs, that the district court properly found that Mr. Leibowitz brought this case in bad faith. The record is not sufficient to support the district court's finding of bad faith. You need clear evidence that the conduct was without color and motivated by an improper purpose, meaning that here there needs to be clear evidence that Mr. Leibowitz had actual knowledge that the photograph at issue in the complaint was in fact not registered at the time of the complaint. But the photographer himself, Mr. Usherson, submitted a sworn declaration that even he believed the photograph was within the registration alleged at the time the complaint was filed and continued in that belief until seeing deposit copies in early 2020. That certainly provides an adequate or at least some basis for the claim here to defeat the finding of bad faith. This court in the Schlaefer decision has made clear there's a difference between a whatsoever. Here the finding of bad faith with respect to bringing the case was not supported. Mr. Newberg also said multiple times that we cherry picked the record and then on the whole, including in response to Judge Carney's question about the mediator being a neutral witness, on the whole the record showed otherwise. We exhaustively detailed every one of Judge Furman's findings. There's no finding Mr. Newberg has identified either here or in his brief that we did not address. So I don't understand the claim of cherry picked. Lastly, I want to just address Mr. Newberg's statement that the opinion below was measured. The opinion opened by citing a litany of names that Mr. Leibowitz has been called by other courts where Mr. Leibowitz represents artists in pursuing their copyright claims in low dollar value cases. To call him a troll and a lamprey certainly is not measured and we can test Mr. Newberg saying otherwise. Unless the panel has questions, I see our time's up and we'll rest on the briefs. Thank you. Thank you. Thank you and we will take the matter under advisement. Mr. Jacobs, Mr. Newberg, very well argued on both sides. Thank you. Thank you. Thank you, Judge. Take care.